IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| YANCEY L. FORKNER, ) | |
| EMILY K. FORKNER, ) | Bankruptcy No. 10-01585 |
| ) | |
| Debtors. ) | |

**ORDER RE: DEBTORS' MOTION FOR SANCTIONS**

This matter came before the Court at a hearing on September 16, 2010 on Debtors' Motion for Sanctions against Brian Harvey d/b/a Northeast Iowa Collections. Debtors allege that Mr. Harvey violated the Automatic Stay. Mr. Harvey denies the allegation. Debtors appeared with Attorney Steven G. Klesner. Mr. Harvey appeared pro se. After the presentation of evidence and argument, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. 157(b)(2)(A) and (O).

**STATEMENT OF THE CASE**

Debtors Yancey and Emily Forkner seek the return of funds garnished from Yancey Forkner's wages. Debtors also request that Mr. Harvey be sanctioned for violating the automatic stay. They seek actual damages and punitive damages from Mr. Harvey under 11 U.S.C. § 362(k). Mr. Harvey denies the allegations and argues his actions were, at most, technical or de minimis violations and no damages should be awarded. The Court finds Mr. Harvey violated the stay and Debtors have proven they are entitled to damages.

**FINDINGS OF FACT**

On March 13, 2002, over eight years before Debtors filed bankruptcy, Carroll Car Credit Company ("CCCC") obtained a $4,000.00 judgment against Debtors in Iowa District Court ("the judgment"). In 2004, CCCC assigned the judgment to another party who in turn assigned it to Mr. Harvey. Mr. Harvey handled the judgment collection process. Mr. Harvey is the sole proprietor of Northeast Iowa Collections, and continues to own the judgment.

For the next six years, Mr. Harvey made numerous attempts to collect on the judgment. In November 2006, Mr. Harvey filed papers seeking to execute on the judgment and garnish Debtors' wages. In those filings, he recited that the principal due was $4,000 and interest due was $4,835.32. Interest had accrued at 25.00% per year. The November 2006 filing resulted in a garnishment of $1,407.37 of Yancey Forkner's wages. Mr. Harvey followed the filing procedures—including an application to condemn funds—and eventually received those funds less the Sheriff's costs.

Mr. Harvey repeated this process over the next few years. In March of 2007, he sought to execute on the judgment again and recited the amount owing as including principal of $4,000 and interest of $4,001.15. This resulted in collection of $726.72 of garnished funds—for which Mr. Harvey again made and received application for condemnation. In 2007, it appears he received the maximum amount of garnishment allowed.

In April 2010, he again filed his execution and garnishment paperwork. He now sought a total of $10,467.80—$4,000 of principal and $6,400.80 of interest. By the time he had sent notice of garnishment, he was requesting principal and interest totaling $10,521.02. At that time, Yancey Forkner was working at a different company headquartered in Des Moines, Iowa. The

garnishment paperwork originated from Delaware County but was sent to Polk County for execution. This garnishment resulted in collection of Yancey Forkner's wages both before ($584.64) and after ($145.99) Debtors' bankruptcy filing.

Debtors filed their Chapter 7 petition on June 7, 2010. Debtors' counsel immediately notified the Polk County Sheriff. The Polk County Sheriff immediately cancelled the garnishment. Mr. Harvey testified that he was aware of the Debtors' bankruptcy filing through his receipt of formal notice and a telephone conversation with the Polk County Sheriff on June 7, 2010.

Debtors listed CCCC's claim on their Schedule F as an unsecured claim. In response to Question 4 of their Statement of Financial Affairs, Debtors listed the $584.64 in funds garnished prepetition (resulting from the April 2010 garnishment) for the benefit of CCCC. On their Schedule C, Debtors claimed the $584.64 in garnished wages as exempt under Iowa Code § 627.6(10).

Yancey Forkner's wages were garnished an additional $145.99 for a pay period ending on June 6, 2010 with a post-petition pay date of June 11, 2010. Mr. Harvey did not dispute this additional garnishment. The garnished wages associated with this Motion for Sanctions thus total $730.63.

On July 7, 2010, one month after the Debtors filed their bankruptcy petition, Mr. Harvey, already knowing of the bankruptcy, filed an Application to Condemn the garnished funds in Iowa District Court. An Order to Condemn Funds was issued on the same day. Mr. Harvey testified that he had submitted the Application to Condemn Funds to the Iowa District Court weeks before the Debtors filed their bankruptcy petition. He claims the Clerk of Court formally

filed and acted on the Application to Condemn automatically according to its standard practice. He did not present any evidence from the Clerk of Court to support that assertion.

Mr. Harvey assumed the Clerk of Court would retain the garnished funds pending the Debtors' bankruptcy case. This had been his experience with other counties under similar circumstances. One month after the Debtors filed their petition, Mr. Harvey received a check for the garnished funds from the Clerk of Court in the amount of $730.63. Mr. Harvey deposited the check in a bank account for Northeast Iowa Collections. As the sole proprietor, he also used the account for personal banking. He says he did not know what else to do with the money. He did not consult counsel, contact the standing Trustee, or contact counsel for the Debtors. He just kept the money.

Debtors pursued the money in bankruptcy court. They filed a Motion to Avoid Judicial Lien on Exempt Property and for Turnover of Property to Debtor on July 9, 2010. Mr. Harvey did not file a resistance to the July 9 Motion, but did file an Objection to Exemption of Property. Debtors filed an Objection to Mr. Harvey's Objection to Exemption of Property. On August 19, 2010, Mr. Harvey made an additional assertion of his right to keep the money when he filed a Motion to Compel Abandonment of Property. The next day, Debtors filed an Objection to Mr. Harvey's Motion to Compel Abandonment and moved for sanctions against Mr. Harvey. On September 2, 2010, Mr. Harvey filed a Motion asking the Court to order a Rule 2004 Examination. Debtors filed an Objection to this Motion as well. On September 7, 2010, Mr. Harvey withdrew his Objection to Exemptions, Objection to Motion for Turnover, Motion to Compel Abandonment of Property, and Motion for Order for Rule 2004 Examination.

Mr. Harvey then tendered a money order in the amount of $584.64 to counsel for Debtors to be held in trust pending the outcome of this matter. He has retained the balance of the total garnished wages. Yancey Forkner testified that he suffered actual damages in the form of lost wages and emotional distress as a result of Mr. Harvey's failure to return the garnished funds.

**CONCLUSIONS OF LAW**

Mr. Harvey appeared pro se and asked the Court to be more lenient with him because he did not have counsel. As the Court informed him at the hearing, pro se parties are held to the same standard as parties represented by attorneys. Harmon Autoglass Intell. Prop., LLC v. Leiferman (In re Leiferman), 428 B.R. 850, 854 (B.A.P. 8th Cir. 2010). Debtors bear the burden of proving a violation of the automatic stay by the preponderance of the evidence. In re Westman, 300 B.R. 338 (Bankr. D. Minn. 2003) (citing Grogan v. Garner, 498 U.S. 279, 286 (1991)).

The filing of a bankruptcy petition imposes the automatic stay of § 362 which prohibits creditors from engaging in "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(5). A creditor may not continue any prepetition judicial action against the debtor or enforce a judgment obtained before the commencement of a debtor's case. 11 U.S.C. § 362(a)(1) & (2). The § 362 automatic stay "is among the most basic of debtor protections under bankruptcy law." In re Vierkant, 240 B.R. 317, 320 (B.A.P. 8th Cir. 1999).

The scope of the automatic stay is extremely broad. In re Hromidko, 302 B.R. 629, 631 (Bankr. N.D. Iowa 2003) (citing In re Knaus, 889 F.2d 773, 774 (8th Cir. 1989)); Vierkant, 240 B.R. at 320. Congress intended the automatic stay to stop "all collection efforts, all harassment,

5

and all foreclosure actions" and "prevent creditors from attempting in any way to collect a prepetition debt." Hromidko, 302 B.R. at 632 (citing H.R. 595, 95th Cong., 1st Sess. § 340–42 (1977), U.S. Code Cong. & Admin. News 1978, 5963, 6298; In re Grau, 172 B.R. 686, 690 (Bankr. S.D. Fla. 1994)). "Because of its fundamental importance, courts must display a certain rigor in reacting to violations of the automatic stay." In re Pearce, 400 B.R. 126 (Bankr. N.D. Iowa 2009) (citing In re Tuecke, 2006 WL 3000028, *1 (Bankr. N.D. Iowa 2006).

This case involves money garnished pre-petition. Debtors assert an interest in those funds as "accrued wages" and that those funds were exempt from execution by or turnover to the creditor. Debtors note that the bankruptcy was filed before any of the funds were condemned.

> The portion of Iowa's general exemption statute upon which the Debtors rely states:
> A debtor who is a resident of this state may hold exempt from execution the following property: . . . In the event of a bankruptcy proceeding, the debtor's interest in accrued wages . . . as of the date of filing of the petition in bankruptcy, not to exceed one thousand dollars in the aggregate.

Iowa Code § 627.6(10) (2009). Under Iowa law a debtor retains some interest in garnished funds until the Iowa District Court enters an order condemning the funds. In re See, 301 B.R. 549, 551 (Bankr. N.D. Iowa 2003) (citing In re Yetter, 112 B.R. 301, 303 (Bankr. S.D. Iowa 1990)). "The order condemning the funds extinguishes any right or interest of the debtor held in the funds." Id. (citing In re Climer, No. 97-01864, slip op. at 2 (Bankr. N.D. Iowa Nov. 26, 1997)). Until the condemnation order is entered, a debtor possesses an interest in garnished funds. "Debtor has an equitable interest in raising defenses or exemptions until the funds are condemned." Id. (citing Climer, slip op. at 2).

Because Debtors have an equitable interest in the garnished funds, their interest is property of the bankruptcy estate. The estate "is comprised of all legal or equitable interests of

6

the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). A creditor that possesses property of the estate is subject to the turnover requirements of § 542. "[A]n entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a). See also United States v. Whiting Pools, Inc., 462 U.S. 198, 207 (1983) (interpreting § 542(a) to grant "to the estate a possessory interest in certain property of the debtor that was not held by the debtor at the commencement of [the case]," and holding that property seized but not yet sold before the filing of the bankruptcy petition is property of the estate subject to § 542(a)'s turnover requirements).

The creditor has an affirmative duty to return estate property, regardless of whether the creditor obtained the property pre- or post-petition. Knaus, 889 F.2d 773, 775. The Eighth Circuit summarized the rationale for this duty:

> [A] person holding property of a debtor who files bankruptcy
> proceedings becomes obligated, upon discovering the existence of
> the bankruptcy proceedings, to return that property to the debtor
> (in chapter 11 or 13 proceedings) or his trustee (in chapter 7
> proceedings). Otherwise, if persons who could make no substantial
> adverse claim to a debtor's property in their possession could,
> without cost to themselves, compel the debtor or his trustee to
> bring suit as a prerequisite to returning the property, the powers of
> a bankruptcy court and its officers to collect the estate for the
> benefit of creditors would be vastly reduced. The general creditors,
> for whose benefit the return of property is sought, would have
> needlessly to bear the cost of its return. And those who unjustly
> retain possession of such property might do so with impunity.

Id. at 775.

If a court has not issued a condemnation order on garnished funds prepetition, a creditor's failure to return those garnished funds is a continuation of a proceeding against the debtor in violation of § 362(a)(1). In re See, 301 B.R. at 553. See also Dencklau, 158 B.R. at 800 (citing In re Dugey, 99 B.R. 814 (Bankr. S.D. Ohio 1989)). A creditor has an affirmative duty to stop garnishment proceedings and return funds they received post-petition even though the creditor had taken no affirmative collection action post-petition. See In re McMullen, 386 F.3d 320, 330 (1st Cir. 2004) (creditor has an affirmative duty to remedy a violation of the automatic stay even for a technical violation); In re Scroggin, 364 B.R. 772, 781 (B.A.P. 10th Cir. 2007) (creditor's "refusal to take affirmative action to get the garnishment stopped cannot be seen as anything other than intentional conduct"). See also In re Caffey, 384 Fed. Appx. 882, 886–87 (11th Cir. 2010) (citing Scroggin and other authority and requiring affirmative conduct by creditor to stop legal proceedings and their effect).

"To recover damages under § 362, Debtors must show that they were injured by the violation of the stay and that the violation was willful." In re Lankford, 305 B.R. 297, 302 (Bankr. N.D. Iowa 2004) (citing Lovett v. Honeywell, Inc., 930 F.2d 625, 628 (8th Cir. 1991)). "A willful violation of the automatic stay occurs when the creditor acts deliberately with knowledge of the bankruptcy petition." Knaus, 889 F.2d at 775; In re Cullen, 329 B.R. 52, 57 (Bankr. N.D. Iowa 2005); In re Goodfellow, 298 B.R. 358, 361 (Bankr. N.D. Iowa 2003); In re Dencklau, 158 B.R. 796, 800 (Bankr. N.D. Iowa 1993). Intent is irrelevant. Dencklau, 158 B.R. at 800 ("A willful violation of the automatic stay does not require a specific intent to violate a court order . . . [n]or does it require a specific intent to violate the automatic stay. A violation may be willful even if an entity believes the stay is not applicable to its conduct.") (citations omitted).

8

If a debtor proves a violation of the automatic stay, the court must award damages. Section 362(k) states that "[a]n individual that is injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." In imposing actual damages, the trial court has discretion to fashion the punishment to fit the circumstances. Hubbard v. Fleet Mortgage Co., 810 F.2d 778, 782 (8th Cir. 1987).

Egregious, intentional misconduct by a creditor violating the automatic stay will support a punitive damages award. In re Ketelsen, 880 F.2d 990, 992 (8th Cir. 1989). "Punitive damages must have a rational relationship to actual damages." Lankford, 305 B.R. at 303. Courts also may consider the deterrent effect in determining punitive damages. In re Heghmann, 316 B.R. 395, 406 (B.A.P. 1st Cir. 2004). This need for deterrence is somewhat mitigated when the creditor in the case was an unsophisticated player. See Lankford, 305 B.R. at 302; In re Cullen, 329 B.R. at 58; In re Bivens, 324 B.R. 39, 43–44 (Bankr. N.D. Ohio 2004).

**ANALYSIS**

The law is settled that the automatic stay applies to ongoing garnishment proceedings. It is undisputed that Mr. Harvey as the garnishor was aware of Debtors' bankruptcy petition. At the time Debtors filed their petition, they possessed an interest in the garnished funds. Further, Debtors properly listed their interest in the garnished wages as of the date of filing as exempt property. Neither CCCC nor Mr. Harvey objected to the Debtors' scheduling the garnished funds as exempt property.

Mr. Harvey improperly allowed the garnishment of Yancey Forkner's wages to continue after the petition was filed. He failed to halt the garnishment proceedings and, in particular, he

9

failed to take the affirmative action the law requires to stop his collection action. Knaus, 889 F.2d at 775; see also McMullen, 386 F.3d at 330; Scroggin, 364 B.R. at 781; Caffey, 384 Fed. Appx. at 886–87.

Mr. Harvey failed to withdraw the Application to Condemn. He not only failed to stop the proceedings, he took possession of and deposited the garnished funds in his personal bank account. He did not contact the Trustee or consult counsel. He ignored demands from Debtors' counsel and, without good reason, resisted the Debtors' legal proceedings attempting to secure the funds. Based upon the evidence, Debtors have satisfied their burden of establishing that Mr. Harvey engaged in a willful violation of the automatic stay.

As a result of this finding, the Court must evaluate the appropriate remedies provided for under § 362(k). In re Anderson, 430 B.R. 882, 888 (Bankr. S.D. Iowa April 13, 2010). Debtors have requested compensatory and punitive damages. Mr. Harvey has argued in resisting that the Debtors were not harmed by his stay violations. He claims there was simply disagreement over whether he should return the garnished funds. Mr. Harvey points out that he eventually tendered a portion of the garnished funds that he belatedly concluded he might owe to be held in trust by Debtors' counsel. However, he did so only after Debtors were forced to resort to the courts in order to enforce their automatic stay rights. See Dencklau, 158 B.R. at 801. Mr. Harvey has refused to date to return the balance of the garnished funds in his possession. He argues that Debtors have only requested the amount he already placed in escrow—which equals the amount Debtors claimed as garnished funds in their schedules. Mr. Harvey claims all of his actions were justified because he was waiting for a court order to determine his rights to the garnished funds.

Mr. Harvey's arguments misstate and misapprehend the duties of a creditor to comply with the automatic stay. Mr. Harvey had an affirmative duty to stop all garnishment proceedings under the stay. Mr. Harvey similarly had a duty to return all property of the estate in his possession. At a minimum, Mr. Harvey should have sought counsel to determine the proper course. His failure to do so was his choice, but he is bound by the consequences. A court order is not a prerequisite to this affirmative duty to turn over the garnished funds he received postpetition. His assertion that he was simply waiting for an order does not excuse him from liability for violating the automatic stay.

Debtors have incurred attorney fees and lost wages as a result of this action. They are entitled to recover those losses as compensatory damages. The Court finds that Debtors are entitled to damages in the form of lost wages in the amount of $96.00, and attorney fees in the amount of $2,100.00. Mr. Harvey never challenged those damage figures at the hearing. Debtors are also entitled to the return of all the garnished funds at issue here.

The last issue before the Court is whether to award punitive damages. The evidence demonstrates that Mr. Harvey committed multiple stay violations in this case. Mr. Harvey allowed the garnishment of wages to continue postpetition. He failed to withdraw the Application to Condemn. He deposited estate property in his personal bank account rather than contacting the Trustee or consulting counsel. The law requires creditors to steadfastly comply with the automatic stay. Punitive damages are appropriate here as a penalty for cavalier behavior. Punitive damages are also necessary to deter Mr. Harvey and other creditors from gambling on the chance that damages awarded for a stay violation would be less than they recovered or would have paid to an attorney for advice. After weighing these factors, the Court finds that Debtors are

entitled to punitive damages in the amount of $1,000.00. **WHEREFORE,** Debtors' Motion for Sanctions against Brian Harvey, d/b/a Northeast Iowa Collections, is GRANTED.

**FURTHER,** the Court orders that Mr. Harvey turn over garnished funds to the Debtors in the amount of $730.63. Of that amount, $584.64 shall be applied from the funds held in trust by Debtors' counsel for the benefit of Mr. Harvey.

**FURTHER,** the Court finds that Debtors Yancey L. and Emily K. Forkner have established, by a preponderance of evidence, that Mr. Harvey violated the § 362(a) automatic stay and therefore are entitled to damages pursuant to § 362(k).

**FURTHER,** the Court awards Debtors actual damages for attorney's fees in the amount of $2,100.00, and for lost wages in the amount of $96.00.

**FURTHER,** Debtors are awarded punitive damages in the amount of $1,000.00.

**FURTHER,** judgment of the foregoing shall enter accordingly.

Dated and Entered: December 22, 2010

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE